******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* GILBERTO PATRICIO CARRILLO
## (AC 43529)

Bright, C. J., and Clark and Eveleigh, Js.

*Syllabus*

The defendant, who had been convicted of the crimes of sexual assault and risk of injury to a child, appealed to this court from the judgment of the trial court, claiming that he was deprived of his right to a fair trial as a result of certain improprieties the prosecutor committed during closing and rebuttal arguments to the jury. The defendant had engaged in various incidents of sexual behavior with his girlfriend's ten year old daughter who, thereafter, underwent a forensic interview by a single social worker. The defendant, who did not object at trial to any of the alleged improprieties, claimed that the prosecutor argued to the jury facts that were not in evidence, vouched for the credibility of the state's witnesses, appealed to the emotions of the jurors, and impugned the integrity and institutional role of defense counsel. *Held*:

1. The prosecutor made certain comments to the jury that were not supported by the record and were unconnected to the issues in the case:

a. Although it was not improper for the prosecutor to state to the jury that the procedure of having one social worker conduct a forensic interview of the minor child was designed to achieve the most unbiased and reliable interview of the child and that a child who talks with a medical provider will provide accurate information, the prosecutor improperly stated that the child could not have a point of reference as to certain sexual experiences due to her age, as that comment was not supported by the evidence and concerned issues that were for the jury to determine; moreover, the prosecutor's bald assertion that fathers do not sexually abuse their children amounted to improper, unsworn evidence that was unsupported by the record, as it did not ask the jurors to utilize their common sense to assess or draw reasonable inferences from the evidence, and his statement that the social worker testified that it was not unusual for a child to sleep in the same bed with her noncustodial parent during visitation also was improper, as it was unsupported by the record.

b. The defendant's assertion that the prosecutor improperly vouched for the minor child's credibility was unavailing: the prosecutor properly invited the jury to draw reasonable inferences from the evidence when he stated that any consistencies in the witnesses' testimony clearly fell under the category of an innocent lapse in memory rather than an intentional and malicious attempt to mislead, as his comment was not directed toward the child's testimony but to that of all the witnesses and was made in the context of reminding the jurors that it was their role to determine the credibility of the witnesses; moreover, the prosecutor's statement that a child, like an adult, would give medical personnel accurate information was based on a reasonable inference from the child's testimony about the effect of the defendant's conduct on the growth of her breasts.

c. Although the prosecutor improperly remarked that the minor child was bilingual and was trying to learn a language, as well as keeping her own culture, which had no connection to the issues in the case, the defendant's claims that the prosecutor improperly appealed to the jurors' emotions were unavailing: the prosecutor's invitation to the jurors to consider whether they would want their children or grandchildren to go through multiple rounds of interviews if they had been sexually abused drew from the evidence and invited the jurors, who had heard the child's experience, to draw from their common sense and experience; moreover, although the prosecutor improperly invited the jurors to draw an inference that was based on facts that were not in evidence when he asked them to consider whether their children or grandchildren would have had any frame of reference for understanding that something sexual such as having their nipples sucked was improper, it did not suggest that the jurors should do so on the basis of emotion, and the prosecutor's comment that sexual abuse goes against the core of our being to protect,

nurture and raise children appropriately was in response to defense counsel's statements to the jury that the case involved facts and crimes that were outside the bounds of morality.

d. The prosecutor's statement that defense counsel "bashed" the witnesses during cross-examination did not overstep the bounds of permissible argument, as the prosecutor's statement was based on the evidence and the state's burden to prove its case, and was not a suggestion that defense counsel acted improperly: although this court did not condone the use of the word bash, its use was not intended to mislead the jury but, rather, described what the prosecutor viewed as defense counsel's emphasis during closing argument on his assertion that the state failed to meet its burden of proof because its witnesses were unreliable; moreover, the prosecutor stated that defense counsel had a different read on the case, which was not unusual, because that was counsel's job, and the prosecutor argued that the jurors should rely on the witnesses, despite defense counsel's criticisms; furthermore, the prosecutor put his comments to the jury in context when he stated that, although the jury may not have liked how counsel tried the case, the bottom line was whether the elements of the crimes were proven beyond a reasonable doubt.

2. The improprieties committed by the prosecutor were not so egregious that, in light of the entire trial, they denied the defendant his due process right to a fair trial: the improprieties, all of which were single, isolated statements, were not invited by defense counsel, whose failure to object to the alleged improprieties when they occurred, to challenge them during his closing argument to the jury or to request a curative instruction from the court highlighted that he presumably did not view the improprieties as so prejudicial as to jeopardize seriously the defendant's right to a fair trial; moreover, although two of the prosecutor's improper statements implicated the minor child's credibility, which was central to the case, the impact of their brief and isolated nature was minimal, and the prosecutor reminded the jurors on several occasions that it was their responsibility to assess the witnesses' credibility, which was the critical issue in the case; furthermore, the court's extremely thorough jury instructions were sufficiently curative; additionally, the state's case was not weak due to the lack of conclusive physical evidence, as the child's testimony provided very detailed descriptions of the defendant's conduct and was consistent with the testimony of the other witnesses as well as with the video of her forensic interview.

Argued September 14—officially released December 14, 2021

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of sexual assault in the third degree, sexual assault in the fourth degree and risk of injury to a child, brought to the Superior Court in the judicial district of New Haven, geographical area number seven, and tried to the jury before *K. Murphy, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*John R. Weikart*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *James R. Dinnan*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

EVELEIGH, J. The defendant, Gilberto Patricio Carrillo, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A),[1] two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A),[2] and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[3] On appeal, the defendant claims that he is entitled to a new trial on the grounds that the prosecutor, in his closing and rebuttal arguments to the jury, violated the defendant's right to a fair trial by improperly (1) referring to facts not in evidence, (2) vouching for the credibility of witnesses, (3) appealing to the passions, emotions, and prejudices of the jurors, and (4) impugning the integrity and institutional role of defense counsel. We conclude that, although some of the prosecutor's comments constituted improprieties, nevertheless, those improprieties did not deprive the defendant of his due process right to a fair trial. Accordingly, we affirm the judgment of conviction.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The victim, M,[4] is the daughter of the defendant's girlfriend. In the spring and summer of 2017, when M was ten years old, she lived with her mother, the defendant, and her one year old sister, who is the daughter of the defendant and M's mother. M spent weekends with her biological father.

The defendant looked after M and her sister after M returned home from school because the children's mother was usually still at work. During the spring and summer of 2017, while M's mother was working, the defendant touched M's breasts with his hands and mouth on several occasions. M testified at trial that, on one occasion, the defendant pushed her down onto her bed, held her hands over her head, pulled up her shirt and bra, and touched her breast, which M testified "hurt a little." On another occasion, M was lying on the living room sofa, and the defendant laid down next to her, pulled her hands over her head, raised her shirt and bra, and used his mouth to suck the nipples of her breasts. On a third occasion, the defendant again used his mouth to suck the nipples of her breasts as he held her hands above her head. The defendant told her that this would make her breasts grow.[5] M testified that the defendant touched her breasts "a lot" during the spring and summer of 2017. Specifically, that he sucked her nipples "a few times" but not as many times as he touched her breasts with his hands.

M told her mother about the defendant's behavior after M became angry at the defendant for ordering her around the house. Her mother told M that if he touched

M's breasts again, they would report the defendant to the police. After this conversation, the defendant stopped touching M's breasts for some time but eventually began to do so again. M did not tell her mother when the incidents with the defendant resumed because she was afraid that (1) she would be unsafe, (2) she would not be able to see her little sister anymore, (3) her sister would grow up without a father if the defendant went to jail, and (4) her mother would not have the financial help she needed to pay bills. M's mother eventually disclosed the defendant's behavior to the pediatrician who treated M's sister, who, in turn, reported it to the Department of Children and Families (department). Thereafter, the department notified the police, and Detective Gary Szlachetka was assigned to investigate.

The department scheduled a forensic interview and a physical examination of M at the Child Advocacy Center at Yale-New Haven Hospital. The forensic interview was conducted by a licensed clinical social worker, Maria Silva. Szlachetka, a department social worker, Alexandra Chisholm, and a nurse practitioner, Beth A. Moller, observed the forensic interview on a television monitor in a separate room. The interview was also recorded and later introduced at trial. During the interview, M told Silva that the defendant touched her breasts with his hands and sucked on her nipples with his mouth multiple times. M also demonstrated how the defendant touched her breasts by forming her hand into the letter "C." In addition, M used dolls to demonstrate to Silva how the defendant touched her.

Moller conducted a physical examination of M, but she did not find anything inconsistent with a normal, healthy child. At trial, Moller agreed that it was typical that there would not be any physical signs of abuse when the abuse alleged was touching and sucking on a child's breasts.[6]

Silva testified regarding the procedure of the forensic interview. Specifically, Silva testified that she had undergone specialized training to interview children in a supportive, nonleading manner.[7] She further testified that it was very common for children to delay disclosing abuse and that it is common for children to disclose abuse when emotions are running high—such as when they are angry. With regard to reasons why children may not disclose or delay in disclosing abuse, Silva stated that "[t]here's a magnitude of [reasons] why children delay in disclosing . . . ."

After a three day jury trial, the defendant was convicted of all charges and sentenced to a total effective term of thirty years of imprisonment, execution suspended after ten years, followed by fifteen years of probation. This appeal followed.

On appeal, the defendant claims that the prosecutor made several improper statements during closing and

rebuttal arguments. Specifically, the defendant claims that the prosecutor improperly (1) referred to facts not in evidence, (2) vouched for the credibility of witnesses, (3) appealed to the passions, emotions, and prejudices of the jurors, and (4) impugned the integrity and institutional role of defense counsel. The defendant claims that the prosecutor's improper statements deprived him of his due process right to a fair trial. The state responds that only one of the alleged improprieties was improper and that none of the prosecutor's remarks, taken separately or in sum, violated the defendant's due process right to a fair trial. Although we agree with the defendant that some of the prosecutor's statements were improper, we nevertheless conclude that he was not deprived of his due process right to a fair trial.

Before we address the merits of the defendant's claims, we set forth the standard of review and the law governing claims of prosecutorial impropriety. "[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [an impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [an impropriety is an impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . ." (Internal quotation marks omitted.) *State* v. *Ciullo*, 314 Conn. 28, 34–35, 100 A.3d 779 (2014).

Although the defendant did not object at trial to any of the prosecutor's alleged improprieties, his claims are nonetheless reviewable on appeal, pursuant to the factors set forth by our Supreme Court in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987).[8] See also *State* v. *Luster*, 279 Conn. 414, 426–28, 902 A.2d 636 (2006).

"[P]rosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . When making closing arguments to the jury, [however, counsel] must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . .

"Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or

diverts the jury's attention from the facts of the case. [The prosecutor] is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent." (Internal quotation marks omitted.) *State* v. *Ciullo*, supra, 314 Conn. 37–38.

I

PROSECUTORIAL IMPROPRIETY

We now turn to whether the prosecutor's remarks in the present case constituted prosecutorial impropriety. The defendant claims that he is entitled to a new trial because the prosecutor, in his closing and rebuttal arguments to the jury, violated his right to a fair trial by improperly (1) referring to facts not in evidence, (2) vouching for the credibility of witnesses, (3) appealing to the passions, emotions, and prejudices of the jurors, and (4) impugning the integrity and institutional role of defense counsel. We will address each of these issues in turn.

A

Facts not in Evidence

"A prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . [A] lawyer shall not . . . [a]ssert his personal knowledge of the facts in issue, except when testifying as a witness. . . . Statements as to facts that have not been proven amount to unsworn testimony, which is not the subject of proper closing argument." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 717, 793 A.2d 226 (2002). "While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury ha[s] no right to consider." (Internal quotation marks omitted.) *State* v. *Martinez*, 319 Conn. 712, 727– 28, 127 A.3d 164 (2015). "It is well established that [a] prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence. . . . [W]hen a prosecutor suggests a fact not in evidence, there is a risk that the jury may conclude that he or she has independent knowledge of facts that could not be presented to the jury." (Internal quotation marks omitted.) Id., 733.

"[I]t is not improper for the prosecutor to comment upon the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the [jurors] the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on [the] one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on

the other hand." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 583, 849 A.2d 626 (2004).

In the present case, the defendant challenges five separate statements the prosecutor made during closing and rebuttal arguments that he argues improperly state facts not in evidence and, thus, amount to improprieties. We address each statement in turn.

The defendant first challenges the prosecutor's statement during closing argument that the procedure of having one social worker conduct a forensic interview of a child who is a possible victim of sexual abuse is designed to achieve "the most unbiased and reliable interview of that child."[9] We are persuaded that this comment is supported by the evidence in the record and, thus, was not improper. This remark by the prosecutor directly relates to Silva's testimony regarding the forensic interview process.[10] The jury could draw a reasonable inference from the evidence that the procedure used by Silva in conducting the forensic interview of M was designed not only to reduce any potential trauma for M but also to allow M to share her story in a "nonleading" way. Specifically, Silva testified about the protocol she follows, such as asking each child she interviews the same types of questions, learning as little as possible about the allegations prior to the interview, building rapport with the child, allowing the child's answers to lead the interview, and taking certain precautions to further the goal of the forensic interview, which is to have the child convey their own statement or story. The absence of the word "reliable" in Silva's testimony does not preclude the jury from drawing a reasonable inference that the procedure she used in conducting the forensic interview was designed to be unbiased and reliable. The prosecutor's comment directly related to Silva's description of the interview process. We agree with the state that the jury could view the prosecutor's comment as asking the jury to draw a "reasonable inference based on Silva's testimony that the interview process she follows was designed to reliably convey the child's account of the abuse," and, therefore, we do not find that this statement constitutes prosecutorial impropriety.

The defendant next challenges the prosecutor's statement that "[c]hildren feel the same way, I would propose. . . . [W]hen a child sits down and talks to a medical person, a doctor, an [advanced practice registered nurse], someone who's gonna do a physical examination, they're gonna give them information that is accurate . . . ."[11] The state argues that the prosecutor properly asked the jurors to "apply common sense and their own life experience." We agree with the state that this comment does not amount to prosecutorial impropriety.

The prosecutor's statement is consistent with our

Supreme Court's discussion in *State* v. *Fauci*, 282 Conn. 23, 36, 917 A.2d 978 (2007). In *Fauci*, the defendant argued that the prosecutor improperly introduced her personal opinion regarding the credibility of the witnesses when she stated during rebuttal argument, "I think that the most important thing for you to look at when you're trying to evaluate people's statements is that you should look at whether or not they had—when they made these statements, were they implicating themselves? . . . And maybe because I've been in this business for a long time, it's not hard for me to see that people tend to lie to get themselves out of trouble, not to get themselves into trouble. And maybe because I've been in this business for a long time, I feel that there seems to be something inherently reliable about statements that people make that implicate themselves [in] wrongdoing . . . . I think it's common sense." (Internal quotation marks omitted.) Id. Our Supreme Court concluded that the prosecutor's remarks "do not suggest that they were based on her knowledge of facts not in evidence. She merely was underscoring the commonsense inference that people do not tend to lie when they make statements against their penal interest." Id., 38.

The prosecutor's statement in the present case, likewise, merely asked the jurors to apply their common sense to the evidence presented. The remark does not suggest that the prosecutor was basing his comment on facts outside of the evidence, as he stated to the jury: "Children feel the same way, *I would propose.*" (Emphasis added.) Furthermore, testimony adduced at trial from M and Moller regarding M's concern about the effect the defendant's conduct might have on the growth of her breasts is plainly evidentiary support for this statement. As such, this statement does not amount to an impropriety.

The defendant next challenges the prosecutor's comment that a ten year old child does not have a point of reference as to sexual experiences such as someone sucking on her nipple.[12] We agree with the defendant that this comment is not supported by the evidence at trial.

The challenged statement is analogous to that addressed by our Supreme Court in *State* v. *Alexander*, 254 Conn. 290, 755 A.2d 868 (2000). In *Alexander*, the prosecutor did not confine herself to the record, stating to the jury, "[t]hat's how little kids think," and that children "can't make this up." (Emphasis omitted; internal quotation marks omitted.) Id., 301. In addition, the prosecutor suggested that an eight year old is not "sophisticated [enough to be able] to fabricate a story involving sexual abuse." (Emphasis omitted; internal quotation marks omitted.) Id. Our Supreme Court held that it was "wholly improper for the prosecutor to insinuate the truthfulness of certain claims, thereby inducing

the jury to review the case by means of facts not in evidence." Id., 306. As in *Alexander*, the prosecutor in the present case twice asked the jury to consider facts not in evidence when stating that M could not have a point of reference for the defendant's sexual behavior toward her due to her age. In his closing argument, the prosecutor stated to the jury: "This is a ten year old on the video, and then here around twelve, saying how that felt. Number one, didn't like it; pressure. She felt pressure of some—someone sucking her nipple. That's rather descriptive. And does a ten year old child have a point of reference on that sort of sexual thing? I would submit to you, no." In his rebuttal argument he again made this improper comment to the jury by stating: "Again, a ten year old has no frame of reference for that sort of stuff."

As in *Alexander*, there was no testimony at trial in the present case supporting the prosecutor's general statement to the jury that a ten year old child does not have a frame of reference for the defendant's sexual conduct. The comment made by the prosecutor in this case concerned exactly those "principal issues set forth for the jury to determine on [its] own." *State* v. *Alexander*, supra, 254 Conn. 306. Therefore, the comment amounted to an impropriety.[13]

The defendant next challenges the prosecutor's statement that "[f]athers don't sexually abuse children."[14] The state argues that this comment was proper because "it is clear . . . from the context in which the prosecutor made the remark that he was talking about a typical situation that the jurors would have recognized from their life experience." We are not persuaded and, accordingly, agree with the defendant that this statement is unsupported by the record.

Our Supreme Court recently reaffirmed the principle that, although a prosecutor may "appeal to [the jurors'] common sense in closing remarks," that appeal must be "based on evidence presented at trial and reasonable inferences that jurors might draw therefrom." (Internal quotation marks omitted.) *State* v. *Courtney G.*, 339 Conn. 328, 347–48,      A.3d      (2021). In *Courtney G.*, the court concluded that it was proper for the prosecutor to ask the jurors to assess the defendant's credibility in light of his demeanor on the witness stand and "implicitly urged the jurors to infer, on the basis of their common sense and experience, that an innocent man falsely accused of sexually assaulting a child would have exhibited outrage while testifying. Because the prosecutor's argument was rooted in the evidence, we perceive no impropriety." Id., 348.

The prosecutor's comment in the present case is readily distinguishable from the one at issue in *Courtney G.* Here, the prosecutor did not ask the jurors to utilize their common sense and life experience *to assess the evidence*. Rather, the prosecutor made a bald asser-

tion with no support from the record and asked the jurors to use their common sense to create facts, rather than to assess facts already in evidence. To assert to the jury that "[f]athers don't sexually abuse children" does not ask the jury to draw reasonable inferences from the evidence. This is particularly true because the defendant did not testify at trial, and there was no other evidence presented remotely related to such a statement. Rather, it is a statement of fact made by the prosecutor with no support in the evidence, which amounts to improper, unsworn testimony. Accordingly, this statement was improper.

The defendant next challenges the prosecutor's statement that Silva testified that it was not unusual for a child to sleep in the same bed with her noncustodial parent during visitation and that it may be more common in some cultures.[15] The state concedes that Silva never so testified and that there was no other evidence in support thereof. Upon our thorough review of the record, we agree that this statement is entirely unsupported by the record. Therefore, we conclude that this comment was improper.

B

Witness Credibility

The defendant next claims that the prosecutor improperly vouched for the credibility of the state's witnesses on three occasions. The state responds that the prosecutor's comments were properly based on reasonable inferences from trial testimony and permissibly asked the jury to draw from its common sense. We address each of the defendant's claims in turn.

First, the defendant claims that the prosecutor vouched for M's credibility by stating that any inconsistencies in her testimony "clearly fall under the . . . category" of "innocent lapse in memory," rather than an "intentional and malicious attempt to mislead, a falsehood."[16] We are not persuaded.

"The prosecutor may not express his own opinion, directly or indirectly, as to the credibility of witnesses. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position. . . . Moreover, because the jury is aware that the prosecutor has prepared and presented the case and consequently, may have access to matters not in evidence . . . it is likely to infer that such matters precipitated the personal opinions." (Internal quotation marks omitted.) *State* v. *Singh*, supra, 259 Conn. 713. "[Although a] prosecutor is permitted to comment [on] the evidence presented at trial and to argue the inferences that the jurors might draw therefrom, he is not permitted to vouch personally for the truth or verac-

ity of the state's witnesses." (Internal quotation marks omitted.) *State* v. *Albino*, 312 Conn. 763, 780, 97 A.3d 478 (2014). "[A] prosecutor may properly comment on the credibility of a witness where . . . the comment reflects reasonable inferences from the evidence adduced at trial." (Internal quotation marks omitted.) *State* v. *Luster*, supra, 279 Conn. 438.

Our Supreme Court's decision in *Luster* is particularly instructive. In *Luster*, the defendant argued that the prosecutor improperly expressed his own opinion about the credibility of two of the state's witnesses. Id. The prosecutor "referred to uncontested facts adduced at trial and [the witness'] demeanor on the witness stand before suggesting that he was honest and open with us." (Internal quotation marks omitted.) Id., 439. The court found that the remarks were not improper. Id. In its analysis, the court looked to *State* v. *Williams*, 41 Conn. App. 180, 184, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996). In that case, this court concluded that it was "improper for the prosecutor to make repeated bald assertions that the state's witnesses were honest. For example, the prosecutor in that case said: I would submit to you [the jury] that all of these officers are extremely honest; Detective [Nicholas] DeMatteis was very honest with you; and [the officers] all told you honestly what they saw." (Internal quotation marks omitted.) *State* v. *Luster*, supra, 279 Conn. 438–39. Our Supreme Court concluded in *Luster* that the prosecutor's statements were not bald assertions such as those in *State* v. *Williams*, supra, 41 Conn. App. 180, because the prosecutor referred to uncontested facts adduced at trial and the witnesses' demeanor on the witness stand. *State* v. *Luster*, supra, 439.

In the present case, the prosecutor's statement that any inconsistencies in the witnesses' testimony "clearly fall under the . . . category" of "innocent lapse in memory," rather than an "intentional and malicious attempt to mislead, a falsehood," is more like the statement in *Luster* than the statement in *State* v. *Williams*, supra, 41 Conn. App. 180, and, accordingly, we conclude that this comment properly invited the jury to draw reasonable inferences from the evidence. First, contrary to the defendant's argument, the prosecutor's comment was not directed toward M's testimony but to the testimony of all of the witnesses. Second, the prosecutor's comment was made in the context of reminding the jurors that it was their role to determine the credibility of the witnesses in general. Just prior to suggesting to the jury that any inconsistencies in testimony of witnesses are the result of an innocent lapse in memory, the prosecutor reminded the jurors that it was their responsibility to consider the overall demeanor of the witnesses while testifying. In addition, the prosecutor reminded the jurors, on several occasions during closing and rebuttal argument, that it was their role, and not the role of counsel, to determine the credibility of

the witnesses. During closing argument, the prosecutor stated: "[I]t's up to you to determine [M's] credibility and capacity to recall incidents that actually happened to her and to explain those to you folks." Again, during rebuttal argument, he reminded the jurors that "[y]ou make a decision on whether she's a credible witness." Accordingly, in light of the context in which the statement was made and the several instances in which the prosecutor reminded the jurors of their proper role to determine the credibility of the witnesses, we conclude that this comment was not improper.

The defendant next claims that the prosecutor's statement that the forensic interview procedure was the "most . . . reliable interview"[17] constituted improper vouching for M's credibility. We disagree. We previously concluded in part I A of this opinion that this comment was supported by the evidence. Consequently, the prosecutor's statement was a fair comment that was based on the evidence adduced at trial, specifically, a fair argument as to why the jury should credit the statements M made during the forensic interview. The prosecutor argued to the jurors that they should infer that M's statements are truthful because of the circumstances in which the statements were made, which we conclude does not constitute improper vouching for the credibility of a witness.

Finally, the defendant argues that the prosecutor's statement that a child is "gonna give [medical personnel] information that is accurate"[18] improperly vouched for M's credibility during the forensic interview. We previously concluded that this statement was proper in part I A of this opinion. The prosecutor's statement was based on a reasonable inference drawn from the testimony adduced at trial regarding M's concern about the effect of the defendant's conduct on the growth of her breasts. For the reasons we previously stated in part I A of this opinion, we conclude that this statement was proper.

C

Appealing to Jurors' Emotions

The defendant next claims that the prosecutor improperly appealed to the passions, emotions, and prejudices of the jurors in four different ways. The state responds that the prosecutor's comments properly invited the jurors to draw reasonable inferences from the evidence and to apply common knowledge and their life experiences to interpret the evidence.

"[A] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the [jurors'] attention from their duty to decide the case based on evidence. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evi-

dence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal." (Internal quotation marks omitted.) *State* v. *Bell*, 283 Conn. 748, 773, 931 A.2d 198 (2007). "[T]he line between comments that risk invoking the passions and prejudices of the jurors and those that are permissible rhetorical flourishes is not always easy to draw. The more closely the comments are connected to relevant facts disclosed by the evidence, however, the more likely they will be deemed permissible." *State* v. *Albino*, supra, 312 Conn. 773. "[J]urors are not expected to lay aside matters of common knowledge or their own observations and experiences . . . . Therefore, it is entirely proper for counsel to appeal to [the jurors'] common sense in closing remarks." (Internal quotation marks omitted.) *State* v. *Ciullo*, supra, 314 Conn. 45–46.

In the present case, the defendant challenges four separate statements made by the prosecutor during closing and rebuttal arguments that he argues improperly appealed to the emotions, passions, and prejudices of the jurors and, thus, amounted to improprieties. We address each statement in turn.

The defendant first challenges the prosecutor's invitation to the jurors to consider whether they would want their own children or grandchildren to go through multiple rounds of interviews if they had been sexually abused.[19] We conclude this statement was not improper. In *State* v. *Felix R.*, 319 Conn. 1, 10, 124 A.3d 871 (2015), the defendant challenged "statements wherein the prosecutor recounted the difficulties that the victim faced during the investigation and trial," including being interviewed by strangers and having to relive the experience at trial. Our Supreme Court found the prosecutor's comments were proper, because "when put into the context of the entire trial and closing argument, the incendiary potential of the statements" was extinguished. Id. Particularly, the jury had already heard the victim's experience at the time the prosecutor made those statements. Likewise, in the present case, the jury had already heard M's experience, specifically, that M was only interviewed once. In making this statement, the prosecutor was merely drawing on the evidence adduced at trial and inviting the jurors to draw from their common sense and experience rather than reach a decision that was based on emotion.

The defendant next challenges that the prosecutor's request that the jurors consider whether their children or grandchildren would have had any frame of reference for understanding that something sexual such as having their nipples sucked was improper.[20] We previously concluded, in part I A of this opinion, that it was improper for the prosecutor to remark to the jury that a ten year old child does not have a frame of reference for sexual behavior, such as sucking one's nipples, because we concluded that the prosecutor improperly drew on facts

outside of the evidence. We do not believe, however, that this comment improperly appealed to the emotions of the jurors. Although the prosecutor's comment improperly invited the jurors to draw an inference that was based on facts not in evidence, it asked that they do so on a reasoned basis and did not suggest that they do so on the basis of emotion. Thus, we conclude that this comment was not an improper appeal to the jurors' emotions.

The defendant next challenges the prosecutor's comment to the jury that sexual abuse goes against the core "of our being to protect children, to nurture children and to raise children appropriately. When we hear of these things, and, unfortunately, I'm sure you folks have heard of incidents in the past of child abuse, child sexual abuse; it just shakes us right to the core."[21] We conclude this comment was not improper. We find instructive our Supreme Court's recent discussion in *State* v. *Michael T.*, supra, 338 Conn. 726–27. In *Michael T.*, the prosecutor stated that, "[i]f wishes could come true . . . we wouldn't have . . . children, who have to . . . become embarrassed, they have to show you their pain, they have to describe to you their betrayal of trust, and show you [their] tears, all when [the victim] was seven and eight [years old]." (Internal quotation marks omitted.) Id., 727. In concluding that this comment was proper, our Supreme Court looked to *State* v. *Williams*, 65 Conn. App. 449, 783 A.2d 53, cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001), in which this court found proper, in light of the evidence presented, a prosecutor's comment that "[the] case involves many brutal, violent and unpleasant facts . . . . The six year old . . . was the victim of horrible and repulsive crimes and she suffered this degradation at the hands of the defendant . . . . She was humiliated in the worst way imaginable." (Internal quotation marks omitted.) Id., 467. Moreover, in *Michael T.*, defense counsel himself stated that the case was "exceptionally difficult . . . and disgusting . . . . [I]t's a very emotionally compelling case; it's a case that gets you fired up . . . ." (Internal quotation marks omitted.) *State* v. *Michael T.*, supra, 714.

In the present case, defense counsel stated to the jury during his closing argument, "[n]ow, imagine you're the one accused of a crime. Something so awful, so outside the boundaries of anything that you could or ever would do, anything that your morals would ever allow, something unfathomable . . . ." The prosecutor, in his rebuttal, agreed with defense counsel, stating, "[w]hen we hear of these things, and, unfortunately, I'm sure you folks have heard of incidents in the past of child abuse, child sexual abuse; it just shakes us right to the core. And I don't think anybody disagrees with that. What we do have a disagreement on, [defense counsel] and I, is what the evidence showed in this case." In the present case, as in *Michael T.*, defense

counsel himself made statements to the jury acknowledging that the case involved facts and crimes that were outside the bounds of morality. The prosecutor's comment in this case, that child sexual abuse "shakes us right to the core," was merely in response to defense counsel's comment. The prosecutor then brought the jury back to the real issue in the case—the parties' disagreement over what the evidence proved. In the context in which it was said, the prosecutor's comment was not improper.

Finally, the defendant challenges the prosecutor's comment to the jury that M "is bilingual and learning English every day," and, "that just shows you how much she is trying to learn a language, as well as keeping her own culture."[22] We conclude that this comment amounts to an impropriety because it has no connection to the issues in the present case. The fact that M is working hard to learn a language has no relevance to the issues in the present case and would seem calculated solely to appeal to the jurors' emotions to elicit sympathy for M. See *State* v. *Albino*, supra, 312 Conn. 775 (concluding that prosecutor's statement was calculated solely to appeal to jurors' emotions because of lack of relevance to issues in case); *State* v. *Reddick*, 174 Conn. App. 536, 565, 166 A.3d 754 (concluding that prosecutor's reference to broader issue of gun violence in New Haven was improper because it was extraneous and irrelevant to issues before jury), cert. denied, 327 Conn. 921, 171 A.3d 58 (2017), cert. denied,    U.S.    , 138 S. Ct. 1027, 200 L. Ed. 2d 285 (2018). Accordingly, because this comment was entirely irrelevant to the issues in the present case, we conclude that it improperly appealed to the emotions of the jurors.

D

Impugning Integrity and Role of Defense Counsel

The defendant's final claim is that the prosecutor improperly impugned the integrity and institutional role of defense counsel by repeatedly telling the jury that defense counsel "bashed"[23] the witnesses during cross-examination. Specifically, the prosecutor criticized defense counsel's approach of questioning the detective's failure to pursue investigatory leads, characterized defense counsel to the jury as "want[ing] to bash heads," and accused defense counsel of having "bashed" Szlachetka, Silva, and Moller. The state responds that the prosecutor's use of the word "bashed" was rhetorical shorthand for defense counsel's having "challenged" the witnesses. We agree with the state.

"It has been held improper for the prosecutor to impugn the role of defense counsel. . . . Such comments invite the jury to conclude that everyone the [g]overnment accuses is guilty, that justice is done only when a conviction is obtained, and that defense counsel are impairing this version of justice by having the temer-

ity to provide a defense and to try to get the guilty off." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, supra, 279 Conn. 433–34.

"We previously have expressed our disapproval of a prosecutor's use of [the] term [smoke and mirrors], even as an isolated reference . . . because it implie[s], to whatever degree, that defense counsel had not based his argument on fact or reason . . . but had intended to mislead the jury by means of an artfully deceptive argument. . . . Indeed . . . a prosecutor who uses the phrase smoke and mirrors implie[s] that the defendant's attorney intended to deceive and thereby impugn[s] the integrity of the defendant's attorney." (Internal quotation marks omitted.) *State* v. *Albino*, supra, 312 Conn. 777–78. "There is a distinction between argument that disparages the integrity or role of defense counsel and argument that disparages a theory of defense." *State* v. *Orellana*, 89 Conn. App. 71, 101, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005).

Although we do not condone the use of the word "bash," as employed by the prosecutor, we do not find that it rises to the level of prosecutorial impropriety. We conclude that the prosecutor's use of forms of the word "bash" was not intended to mislead the jury or to suggest that defense counsel engaged in unethical conduct. Instead, the prosecutor used it to describe what he viewed as one of defense counsel's points of emphasis during his closing argument—suggesting that the state had failed to meet its burden of proof because its witnesses were unreliable. Although "bash" may be harsher than "criticize" or "attack," its use was the functional equivalent of those terms. After using forms of the word, the prosecutor then argued to the jurors why they should rely on the witnesses, despite defense counsel's criticisms. Furthermore, the prosecutor, when concluding this section of his rebuttal argument, put his comments in context by explaining to the jury: "You might be unhappy with how I decided to run the case, how [defense counsel] decided to defend the case, how a detective or a medical personnel did their job. Bottom line is . . . are the elements of the crimes proven beyond a reasonable doubt?" Thus, the prosecutor's argument was based on the evidence and the state's burden to prove its case and was not a suggestion that defense counsel acted improperly.

We conclude that the prosecutor's comments are analogous to those used in *State* v. *Young*, 76 Conn. App. 392, 819 A.2d 884, cert. denied, 264 Conn. 912, 826 A.2d 1157 (2003). In *Young*, the prosecutor argued to the jurors that they should not to be " 'fooled' " by defense counsel's arguments and stated that defense counsel's questions during cross-examination were designed to distract the jury from the real issues in the case. Id., 405. This court concluded that these com-

ments "did not overstep the bounds of permissible argument"; id., 405; when the prosecutor suggested to the jurors that defense counsel had attempted to divert their attention away from the defendant's action by allocating a significant share of his closing argument to discussing what he deemed to be weaknesses in the witnesses' credibility. Id., 400.

In the present case, the prosecutor's comments likewise attempted to highlight the fact that defense counsel's view of the case was very different from that of the prosecutor, specifically, that they shared different views on the credibility of the witnesses. Thus, during the part of his rebuttal when he used the terms bash, bashed, and bashing, the prosecutor stated that defense counsel had a different read on the case, which is "not unusual. That's his job . . . ." Therefore, we conclude that, read in context, the prosecutor's use of forms of the word "bash" did not overstep the bounds of permissible argument.

## II

### DUE PROCESS

Having found that improprieties occurred, we now turn to whether those improprieties deprived the defendant of his due process right to a fair trial. "When a defendant demonstrates improper questions or remarks by the prosecutor during the course of trial, the defendant bears the burden of showing that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." (Internal quotation marks omitted.) *State* v. *Albino*, supra, 312 Conn. 790. "[A defendant is not entitled to prevail when] the claimed [impropriety] was not blatantly egregious and merely consisted of isolated and brief episodes that did not reveal a pattern of conduct repeated throughout the trial. . . . The question of whether the defendant has been prejudiced by prosecutorial [impropriety], therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Citation omitted; internal quotation marks omitted.) *State* v. *Luster*, supra, 279 Conn. 442.

"[O]ur determination of whether any improper conduct by the [prosecutor] violated the defendant's fair trial rights is predicated on factors set forth in *State* v. *Williams*, [supra, 204 Conn. 540], with due consideration of whether that [impropriety] was objected to at trial. . . . These factors include: [1] the extent to which the [impropriety] was invited by defense conduct or argument . . . [2] the severity of the [impropriety] . . . [3] the frequency of the [impropriety] . . . [4] the centrality of the [impropriety] to the critical issues in the case . . . [5] the strength of the curative measures adopted . . . [6] and the strength of the state's case. . . . The question of whether the defendant has been

prejudiced by prosecutorial [impropriety] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties. . . . Under the *Williams* general due process standard, the defendant has the burden to show both that the prosecutor's conduct was improper and that it caused prejudice to his defense." (Internal quotation marks omitted.) *State* v. *Hargett*, 196 Conn. App. 228, 265–66, 229 A.3d 1047, cert. granted, 335 Conn. 952, 238 A.3d 730 (2020). "Ultimately, [t]he issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Courtney G.*, supra, 339 Conn. 362.

The first of the *Williams* factors is whether the improprieties were invited by defense counsel. See *State* v. *Williams*, supra, 204 Conn. 540. It is undisputed by the state, and our thorough review of the record confirms, that the prosecutorial improprieties were not invited by the conduct of defense counsel.

The second *Williams* factor is the severity of the improprieties. Id. When evaluating severity, we must consider "whether defense counsel objected to the improper remarks, requested curative instructions, or moved for a mistrial. . . . Additionally, we look to whether the [improprieties were] blatantly egregious or inexcusable." (Citation omitted; internal quotation marks omitted.) *State* v. *Courtney G.*, supra, 339 Conn. 362. Although lack of an objection is not fatal to the defendant's claim for a new trial, we must consider this in assessing whether the defendant's right to a fair trial was violated. The failure to object "demonstrates that defense counsel presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Fauci*, supra, 282 Conn. 51. In the present case, not only did defense counsel fail to object to any of the alleged improprieties when they occurred, he did not take the opportunity to address the alleged improprieties in the prosecutor's closing argument during his own closing argument to the jury. Rather, defense counsel began his closing argument to the jury by stating, "[y]ou heard the state over the last few days present their evidence and summarize it for you a few minutes ago." At no point in his closing argument did defense counsel challenge the improper comments made by the prosecutor during his closing, further highlighting that, at trial, defense counsel presumably did not view the improprieties as so prejudicial as to jeopardize seriously the defendant's right to a fair trial. See *State* v. *Fauci*, supra, 51. Furthermore, defense counsel never requested a curative instruction from the court or a mistrial due to any of the improprieties.

Additionally, "the severity of the impropriety is often

counterbalanced in part by the third *Williams* factor, namely, the frequency of the [impropriety] . . . ." (Internal quotation marks omitted.) *State* v. *Daniel W.*, 180 Conn. App. 76, 113, 182 A.3d 665, cert. denied, 328 Conn. 929, 182 A.3d 638 (2018); see *State* v. *Williams*, supra, 204 Conn. 540. "Improper statements that are minor and isolated will generally not taint the overall fairness of an entire trial." (Internal quotation marks omitted.) *State* v. *Felix R.*, supra, 319 Conn. 17; see also *State* v. *Payne*, 303 Conn. 538, 567, 34 A.3d 370 (2012) (With respect to the second and third *Williams* factors, "all three of the contested statements by the prosecutor were isolated and occurred within the state's lengthy closing argument. Additionally, the trial court cured any harm by instructing the jury that the arguments of counsel were not evidence . . . ." (Footnote omitted.)). In the present case, all of the improper comments were single, isolated statements made during closing and rebuttal argument, rather than having been repeated throughout the trial for dramatic effect. See *State* v. *Felix R.*, supra, 17.

The fourth *Williams* factor considers the centrality of the improprieties. *State* v. *Williams*, supra, 204 Conn. 540. In light of the lack of eyewitnesses or physical evidence, the critical issue in this case was the credibility of the witnesses' testimony. We conclude that two of the improper statements directly implicated M's credibility, specifically, the prosecutor's statement that children do not have a point of reference for sexual behavior such as sucking one's nipples and the prosecutor's statement to the jury concerning M's efforts to become bilingual and maintain her culture.[24] Although we conclude that these two comments bear on the centrality of the state's case, given their brief and isolated nature and the lack of any objection from the defense, we are not convinced that the defendant was denied a fair trial. Furthermore, the prosecutor reminded the jurors on several occasions that it was their role, and only their role, to determine witness credibility. See part I B of this opinion. Thus, to the extent that the improprieties did bear on the central issue of the credibility of witness testimony, we are confident that, when viewed in the context of the entire trial, the impact of the improper comments was minimal.

The fifth *Williams* factor considers the strength of curative measures adopted. *State* v. *Williams*, supra, 204 Conn. 540. Although the court did not address any of the prosecutor's improper comments, we conclude that the court's extremely thorough jury instructions were sufficiently curative. "We recognize that general jury instructions can cure the potential effects of minor prosecutorial improprieties." *State* v. *Felix R.*, supra, 319 Conn. 18. We presume that the jury followed the court's instructions "in the absence of any indication to the contrary." *State* v. *Collins*, 299 Conn. 567, 590, 10 A.3d 1005, cert. denied, 565 U.S. 908, 132 S. Ct. 314,

181 L. Ed. 2d 193 (2011). A thorough search of our jurisprudence reveals that the judgment in very few cases has been reversed on the basis of prosecutorial impropriety when defense counsel has not objected to the challenged remarks, moved for a curative instruction, or moved for a mistrial, particularly when the trial court's general jury instructions addressed the improprieties.[25] Our Supreme Court has "note[d] that, in nearly all cases where defense counsel fails to object . . . and [to] request a specific curative instruction in response to a prosecutorial impropriety . . . and the court's general jury instruction addresses that impropriety, [it has] held that the court's general instruction cures the impropriety." *State* v. *A. M.*, 324 Conn. 190, 207, 152 A.3d 49 (2016).

In the present case, the court instructed the jury as follows: "The law prohibits the [prosecutor] or defense counsel from giving personal opinions as to whether the defendant is guilty or not guilty. *It is not their assessment of the credibility of the witnesses that matters, only yours. . . . Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their closing argument is intended to help you interpret the evidence, but their arguments are not evidence.* If the facts as you remember them differ from the way the lawyers have stated them, *your memory of them controls. It is not proper for the attorneys to express their opinion on the ultimate issue in this case or to appeal to your emotions. . . .*

"As I already indicated, and, I guess, I'm indicating again, *you should keep in mind that the arguments and statements by the attorneys in final argument or during the course of the trial are not evidence. You should not consider as evidence their recollection of the facts, nor their personal belief as to any facts or as to the credibility of any witness, nor any facts which any attorney may have presented to you in argument from that attorney's knowledge which was not presented to you as evidence during the course of trial.* If there are—is any difference between what any attorney recalls as the evidence and what you recall as the evidence, *it is your recollection that controls.* Follow your recollection, not anyone else's. . . . *You should not be influenced by any sympathy for the defendant, the defendant's family, the complainant, the complainant's family or for any other person who might, in any way, be affected by your decision.* In addition, as I indicated earlier, *your verdict must be based on the evidence, and you may not go outside the evidence to find facts*; that is, you may not resort to guesswork, conjecture or suspicion, and *you must not be influenced by any personal likes or dislikes, opinions, prejudices, biases or sympathy.*" (Emphasis added.)

We are confident that that these jury instructions had

the curative effect of reminding the jurors that it was their responsibility, and only their responsibility, to assess the credibility of the witnesses solely on the basis of the evidence presented and to determine the facts on the basis of their recollections of the evidence. Additionally, the court made clear several times that the attorneys' arguments were *not* evidence and, thus, should not influence the jury's verdict. This factor weighs heavily in favor of our conclusion that the defendant was not deprived of a fair trial.

The sixth and final *Williams* factor considers the strength of the state's case. See *State* v. *Williams*, supra, 204 Conn. 540. As our Supreme Court has stated, "[t]he sexual abuse of children is a crime which, by its very nature, occurs under a cloak of secrecy and darkness. It is not surprising, therefore, for there to be a lack of corroborating physical evidence . . . . Given the rarity of physical evidence in [sexual assault cases involving children], a case is not automatically weak just because a child's will was overborne and he or she submitted to the abuse . . . ." *State* v. *Felix R.*, supra, 319 Conn. 18. Notably, our Supreme Court has "never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 596.

We conclude that the state's case was not weak due to the lack of conclusive physical evidence. The evidence to support the defendant's conviction included M's testimony, which provided very detailed descriptions of the defendant's conduct and was consistent with both the testimony of the other three witnesses at trial as well as with the video of M's forensic interview conducted years earlier. Furthermore, Silva testified as to reasons why children may delay disclosing abuse and why it was common for children do so. In addition, Silva testified that it was common for children to disclose abuse when their emotions were heightened, as M did in this case. Although two of the improper comments bore on M's credibility, which we acknowledge was central in this case, M's testimony was not the only evidence for the jury to assess. Furthermore, in light of the failure of defense counsel to object to the improprieties, the thorough general jury instructions given by the court, and the prosecutor's repeated reminders to the jurors that it was ultimately their responsibility to assess the credibility of the witnesses, we conclude that the defendant was not deprived of a fair trial.

Finally, our analysis must consider "the fairness of the entire trial, and not the specific incidents of the [impropriety] themselves." (Internal quotation marks omitted.) *State* v. *Ciullo*, supra, 314 Conn. 36. Although the prosecutor made some improper comments, we are confident that, in light of the entire trial, the improprie-

ties did not so taint the defendant's trial as to render it fundamentally unfair. We conclude that, considered in light of the whole trial, the improprieties were not so egregious that they amounted to a denial of due process. See *State* v. *Payne*, supra, 303 Conn. 567.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

[2] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person subjects another person to sexual contact who is (A) under thirteen years of age and the actor is more than two years older than such other person . . . ."

[3] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony for a violation of subdivision (2) of this subsection, except that, if the violation of subdivision (2) of this subsection and the victim of the offense is under thirteen years of age, such person shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

[4] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[5] In addition, Beth A. Moller, a nurse practitioner who had conducted a physical examination of M, testified that M was "very concerned that [the defendant] sucked her nipples, and because he had done that, that her— her breasts would not grow properly."

[6] The following colloquy occurred between the prosecutor and Moller on direct examination:

"Q. Okay. And with regard to your physical examination of the intimate parts of the body . . . what were your findings, if any, with [M]?

"A. They were normal. . . .

"Q. Okay. Is there any significance to that . . . so to speak?

"A. No.

"Q. Is that what you would expect of a child that age?

"A. Yes.

"Q. And is that what you would expect based on the disclosure that you viewed during the forensic interview?

"A. Yes.

"Q. Okay. That's because [M] did not indicate there was any penetration . . . ?

"A. Exactly."

[7] On direct examination, Silva testified: "So, we—here in the state of Connecticut, we utilize a one session interview, which we call a forensic interview. So, it's a single session interview that is video-recorded, and it is conducted in a way to elicit information from the child in a supportive, nonleading manner. So, that way the child does not have to repeat their story, does not have to talk to multiple professionals, and it'll decrease the trauma to the child."

On redirect examination, Silva further testified: "[I]t's supposed—it's a neutral, supportive, nonleading interview. And we don't want to go into it with a lot of preconceived notions or with a lot of information in order not to lead the child indirectly to anything. So, the child is there. We're there to listen to the story that they have to say, and we're not there to lead them in any way."

In addition, Silva testified about the protocol utilized in conducting the interview, which is "loosely based on Finding Words [a training protocol used by forensic interviewers]. . . . So, we start off with rapport building with the child. So, that's our protocol. So, rapport is, you ask lots of questions to build a rapport with the child. Normally, we ask about things they like to do or things they don't like, and so forth. . . . And then from rapport . . . we then transition to asking usually about family and who they live

with and so forth. And then we go into why they—if they know why they're there, and we ask questions based on that. Again, all the questions are open-ended. . . . So, after we ask about that, depending on what the child says, if the child says they don't know why they're there or they say, I came because of this, we follow where the child leads us. And part of that, we also—we always do safety questions, we always do a closure piece. So, there's components of it that we always do. The questions within each component differ, based again, on the age of the child and what the child says."

[8] We discuss the *Williams* factors at length in part II of this opinion.

[9] Specifically, the prosecutor stated: "Silva testified about . . . what is the best mechanism to follow, investigate, determine the medical, social, psychological needs of the child, which is paramount among everyone, but also to have the least trauma imposed on the child of tender years and also to have the most *unbiased and reliable interview of that child*." (Emphasis added.)

[10] See footnote 7 of this opinion.

[11] Specifically, the prosecutor stated: "Just like when you sit down with your doctor, you tell your doctor things that concern you. Why? Because a doctor is going to help you. . . . Because you know, as an adult, that what you tell them they're gonna use to help you physically, mental health wise, counseling, whatever. Children feel the same way, *I would propose. And when a child sits down and talks to a medical person, a doctor, an* [*advanced practice registered nurse*], *someone who's gonna do a physical examination, they're gonna give them information that is accurate*, that is going to help them, help them as a person, help them get the assistance that they need." (Emphasis added.)

[12] Specifically, the prosecutor stated: "The other thing she talked about is the, him sucking her nipple on more than one occasion. And I will suggest that the testimony from [M], both in the video and here, is very powerful, as far as the physical sensation. This is a ten year old on the video, and then here around twelve, saying how that felt. Number one, didn't like it; pressure. She felt pressure of some—someone sucking her nipple. That's rather descriptive. *And does a ten year old child have a point of reference on that sort of sexual thing? I would submit to you, no.* And I would ask you just to use your own common sense, your personal experiences, having children, having grandchildren who have gone through three, four, five, ten years old through puberty, maybe adults now. That's a rather descriptive way of explaining what happened, and she was consistent with that." (Emphasis added.) The prosecutor again made a statement regarding M's point of reference during rebuttal argument, stating to the jury: "Again, a ten year old has *no frame of reference* for that sort of stuff." (Emphasis added.)

[13] Our Supreme Court recently discussed *Alexander* in *State* v. *Michael T.*, 338 Conn. 705, 259 A.3d 617 (2021). In *Michael T.*, the prosecutor asked the jury, "[d]oes [the victim] look like the type of child who would have been evil enough to make this up to get out of the house?" (Internal quotation marks omitted.) Id., 727. In holding this comment to be proper, the court distinguished this comment from the one in *Alexander* for two reasons: the remark was invited by defense counsel, and the prosecutor did not make a broad assertion that no child could make up an allegation of sexual abuse, but, rather, she "suggested only that the jury could infer from this child's appearance and demeanor on the [witness] stand that she was not lying in order to obtain something valuable, namely, getting out of the house." (Emphasis omitted.) Id., 729. In the present case, as in *Alexander*, the prosecutor made a broad statement as to whether *all ten year old children have* the capacity to fabricate a story of such a sexual nature, rather than specifically focusing on M's demeanor on the witness stand, as in *Michael T.* Thus, we conclude that the prosecutor's comments are analogous to those addressed by our Supreme Court in *Alexander* and are readily distinguishable from those in *Michael T.*

[14] Specifically, the prosecutor stated: "He wants to be a father; well, he didn't do a very good job. Fathers don't do that. Fathers don't engage in corporal punishment, normally. *Fathers don't sexually abuse children.* That's a concept, or the argument is preposterous that, somehow, oh, this is just her confusing this roughhousing with the sexual assault." (Emphasis added.)

[15] Specifically, the prosecutor stated: "Maria Silva said that's not unusual that, sometimes, a parent, a child, especially on a visitation when divorced, might sleep in the same bed for a variety of reasons. Also, [she commented] about, sometimes, it's maybe more common in certain cultures."

[16] Specifically, the prosecutor argued: "We touched upon the credibility of witnesses. That is a key factor that the jury must decide. What is the credibility of a witness? Who to believe, who not to believe, et cetera. On the credibility issues, you have—I'll just go over some of the things. . . . What does a witness say, and how did they say it? What is their demeanor? What is their physical response? . . . And is their testimony reasonable and logical? No one has total recall. . . . [T]hat is not the bar, that you remember absolutely everything and that you recite absolutely everything in the exact same fashion that you did yesterday, a year ago, two years ago, five years ago, some experience that you may have. So, if there are inconsistencies in any of the witnesses' testimony, and there were four witnesses that testified during this case, you have to determine if that is [an] innocent lapse in memory or was it an intentional and malicious attempt to mislead, a falsehood. And, again, we're very satisfied that you folks are going to be able to make those determinations. *I submit to you that the evidence that you heard, if there are inconsistencies that you find in witness testimony, clearly fall under the first category.*" (Emphasis added.)

[17] See footnote 9 of this opinion.

[18] See footnote 11 of this opinion.

[19] Specifically, the prosecutor stated: "Not to have four, five different people go into great detail with the child about what happened. Nobody wants to have to go through that. If any of you ever experienced a traumatic situation, you wouldn't want to have to do that, either. And for those of you that have children or grandchildren or nieces or nephews, you understand that development process."

[20] See footnote 12 of this opinion.

[21] Specifically, the prosecutor stated: "No one wants to believe that sexual abuse of children happens. Nobody wants to. Because when we realize that, it goes against the—core of our—of our being to protect children, to nurture children and to raise children appropriately. When we hear of these things, and, unfortunately, I'm sure you folks have heard of incidents in the past of child abuse, child sexual abuse; it just shakes us right to the core."

[22] Specifically, the prosecutor stated: "She thanked [defense counsel] when he complimented her on her English language, as well as Spanish. [M], obviously, is bilingual and learning English every day. To the point where, again, she now calls the defendant Patrick as opposed to Patricio. Maybe that's natural for, you know, an immigrant to kind of want to become more [assimilated], but that just shows how much she is trying to learn a language, as well as keeping her own culture."

[23] The prosecutor used the word "bash" in reference to defense counsel when arguing to the jury on several occasions. During closing argument the prosecutor stated: "Speaking of that, the charges in this case are brought, and I mentioned this earlier, by me. Different people were involved in the investigation. Three of the witnesses have testified, other people who didn't testify. But once the arrest is made, the case is the state's attorney's case. So, if [defense counsel] wants to *bash* heads, mine is the head to bash . . . ." (Emphasis added.)

The prosecutor next stated: "[Defense counsel's] read on the case, as I had suggested when I ended my first part [of closing argument], is very different than mine. That's not unusual. That's his job, and my job is also to highlight what I believe to be important aspects of this case. During the course of closing argument of the defense, [defense counsel] took a lot of time *bashing* some of the witnesses, particularly the detective in this case. . . . Not only *bashed* the detective, bashed the two workers from [Yale-New Haven Hospital]." (Emphasis added.)

[24] See footnotes 12 and 23 of this opinion.

[25] We note that the cases in which our appellate courts have ordered a new trial on the basis of prosecutorial improprieties, in the absence of any objection by defense counsel, involved conduct substantially more egregious than what occurred in the present case. In *State* v. *A. M.*, 324 Conn. 190, 192–93, 152 A.3d 49 (2016), our Supreme Court upheld the decision of this court, concluding that the prosecution's references to the defendant's decision not to testify were improper and deprived him of his right to a fair trial.

In *State* v. *Angel T.*, 292 Conn. 262, 291, 973 A.2d 1207 (2009), our Supreme Court concluded that the trial court's general jury instructions were insufficient to cure improprieties that occurred repeatedly throughout the trial because the instructions did not specifically address all of the improprieties.

Further, in *State* v. *Maguire*, 310 Conn. 535, 562, 78 A.3d 828 (2013), the prosecutor, during both closing and rebuttal remarks, repeatedly stated that

the defendant and defense counsel were asking the jury to condone child abuse. Our Supreme Court held that these remarks were "particularly harmful because, in a close case, the jurors may have felt compelled to find the defendant guilty, lest they be viewed by the state as condoning such contemptible conduct." Id.

In the present case, the prosecutor's remarks did not violate any state statutes or implicate the defendant's constitutional right to remain silent. We do not find the prosecutor's remarks to be particularly egregious in light of the trial as a whole. Further, we conclude that the trial court's general instructions were sufficient to cure any potential harm resulting from the prosecution's improprieties.

Unlike in *Angel T.*, the prosecutor's comments in the present case were confined to only closing and rebuttal arguments, and did not occur repeatedly throughout the trial. Furthermore, the trial court in the present case addressed all of the improprieties in its general instructions to the jury.

Finally, none of the improprieties in this case approaches the prosecutor's conduct in *State* v. *Maguire*, supra, 310 Conn. 546–52. Indeed, the integrity and veracity of defense counsel was not disparaged, as was the case in *Maguire*. See id., 556–58.

———————————————————